Richard L. MILLER and Patricia A. Miller, husband and wife; Patricia A. Lantz; and all others similarly situated, Plaintiffs,

v.

Edward C. ALDRIDGE, Jr., in his official capacity as Secretary of the United States Air Force; John O. Marsh, Jr., in his official capacity as Secretary of the United States Army; James Webb, in his official capacity as Secretary of the United States Navy; Dorcas R. Hardy, in her official capacity as Administrator of the Social Security Administration; Elizabeth Dole, in her official capacity as Secretary of Transportation; Caspar Weinberger, in his official capacity as Secretary of Defense; Otis R. Bowen, in his official capacity as Secretary of Health and Human Services; Department of the Army; Department of the Navy; Department of the Air Force; Department of the Air Force; Department of Transportation; and Department of Health and Human Sercices, Defendants.

No. C87–0253–B.

United States District Court, D. Wyoming.

Nov. 9, 1988.

C.M. Aron, Aron and Hennig, Laramie, Wyo., for plaintiffs.

Judry L. Subar (oral argument and on the brief), John R. Bolton, Vincent M. Garvey (on the brief), Dept. of Justice, Washington, D.C., Richard A. Stacy, U.S. Atty., Carol A. Statkus, Asst. U.S. Atty., D. Wyo. (on the brief), Cheyenne, Wyo, Lt. Col. Jeffrey R. Owens, Belleville, Ill. (on the brief), U.S. Air Force Judge Advocate, for defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, Chief Judge.

This matter comes before the Court on cross-motions for summary judgment. The motions have duly come on for hearing before the Court and have been argued and submitted for decision. The Court, having considered the pleadings on file herein, and the briefs and affidavits in support of and opposition to the motions, and the oral arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Factual Background

In 1972 Congress created the Survivor Benefit Plan, ("SBP"), to provide income to the surviving spouses of military servicemembers who die after becoming eligible to retire. The SBP was codified at 10 U.S.C.A. §§ 1447 to 1455 (1983 & Supp.1988).

Upon reaching retirement age, a servicemember automatically becomes a participant in the SBP. This is true whether or not the servicemember actually retires. If, an active duty, retirement age servicemember dies leaving a widowed spouse under age 62, the widowed spouse will, under the SBP, receive a monthly annuity in an amount equal to fifty-five percent (55%) of the pay the deceased servicemember would

have received during retirement. This benefit is conferred even though the active duty, retirement age servicemember pays nothing to receive the benefits of the SBP.

At the point in time a retirement age servicemember elects to actually retire, he or she is given the choice of whether or not to remain in the SBP. The choice the servicemember has is to do nothing and automatically become enrolled in the SBP, or to "opt out" of the program by filling out a form. If a retiring servicemember elects to remain in the SBP, such election is irrevocable. Once in the program, the servicemember contributes ten percent (10%) of his or her retirement pay to the program. After enrolling in the SBP, should the retiree die leaving a widowed spouse under the age of 62, the surviving spouse will receive an annuity equal to fifty-five percent (55%) of the deceased servicemember's retirement pay.

If a widowed spouse is eligible for SBP benefits when he or she is aged 62 or older, he or she is not automatically eligible to receive the fifty-five percent (55%) annuity. Instead, the annuity is reduced by, for the purposes of this case, "an amount equal to the amount of the survivor benefit, if any, to which the widow or widower would be entitled under Title II of the Social Security Act (42 U.S.C. 401 et seq.) based solely upon service by the [deceased military retiree]...." 10 U.S.C.A. § 1451(e)(3) (Supp. 1988). While this reduction provision has been amended in recent years, the plaintiffs in this case, by the terms of the amended statute, are subject to the statutory language described above. This is true because the plaintiffs became participants, potential beneficiaries, or actual beneficiaries of the SBP on or before October 1, 1985. *See* 10 U.S.C.A. § 1451(e) (Supp. 1988). The reduction to SBP annuity benefits described above has become known as the Social Security offset. When the government should apply the Social Security offset is the central dispute in this case.

The above facts are common to all three of the plaintiffs. I will now discuss the undisputed facts as they pertain to the individual plaintiffs.

### a. Plaintiff Patricia A. Lantz

Plaintiff Patricia A. Lantz is the widowed spouse of Major Alfred C. Lantz. On December 17, 1959, Major Lantz retired from the United States Army after 20 years of service. When the SBP was created in 1972, Major Lantz was given the option of participating in the plan, even though he had retired some years earlier. Major Lantz chose to participate in the SBP. Consequently, Major Lantz paid into the SBP the required portions of his retirement pay, up until his death on December 23, 1985. At the time of Major Lantz's death, plaintiff Patricia Lantz, Major Lantz's beneficiary under the SBP, was 68 years old.

Plaintiff Lantz was, from 1942 to 1981, a member of the work force, earning wages as a registered nurse. Over the years that she worked, Ms. Lantz earned in excess of one hundred and twenty-six thousand dollars ($126,000). These earnings were subject to withholdings for the benefit of the Social Security system. Due to her contributions to the Social Security system, Ms. Lantz receives three hundred sixty-two dollars ($362.00) per month in Social Security old age benefits. But for the fact of Ms. Lantz's entitlement to Social Security benefits based on her own work history, she could receive Social Security benefits based on her husband's military and non-military Social Security earnings, the so called "widow's benefit," or, as it is called in § 1451, the "survivor benefit." *See* 42 U.S.C.A. § 402(e)(1)(D) (1938 & Supp.1988). However, plaintiff Lantz is not entitled, as the word is defined in the statute, to a widow's benefit because the old age benefit that she is entitled to as a result of her own work history, exceeds the widow's benefit she would receive. See 42 U.S.C.A. § 402(e)(1)(D) (1983 & Supp.1988).

When Major Lantz died, plaintiff Lantz became eligible for annuity payments under the SBP. While it is true Ms. Lantz has been receiving payments from the SBP, the payments have been reduced by the Social Security offset. Ms. Lantz contends that the Social Security offset being made against her SBP payments is wrong for the

following reason: The government has been reducing Ms. Lantz's SBP payment by an amount equal to the widow's benefit attributable to Major Lantz's military earnings, even though Ms. Lantz is not actually receiving a widow's benefit, and is indeed, not entitled to such benefit.

In reducing Ms. Lantz's SBP payment, the government takes the position that the language of § 1451 requires the offset be made, even though Ms. Lantz is receiving no Social Security benefit based on her husband's military earnings. Since Ms. Lantz began receiving SBP benefits, those benefits have been offset by the government in the amount of four thousand seven hundred and eighty-eight dollars and forty cents ($4,788.40).

### b. *Plaintiffs Richard L. and Patricia A. Miller*

Plaintiffs Richard L. and Patricia A. Miller are husband and wife. Richard Miller began a career in the United States Air Force on June 5, 1958. In 1981 Richard Miller retired from the Air Force at the rank of Lieutenant Colonel. Upon his retirement, Lt. Col. Miller elected to participate in the SBP. Currently Lt. Col. Miller pays two hundred and thirty-two dollars and thirty-four cents ($242.34) per month in contributions to the SBP.

Ms. Miller has, for fourteen (14) years, been a school teacher, earning wages and contributing to the Social Security system. Should Lt. Col. Miller predecease her, Ms. Miller is not expected to be entitled to widow's benefits from Social Security. This is true because Ms. Miller's anticipated Social Security old age benefit, based on her own earnings, will be greater than the amount she is expected to qualify for under the widow's benefit provisions of the Social Security Act. The Millers are plaintiffs in this action because, in short, they fear what has happened to Ms. Lantz with regard to the Social Security offset will happen to Ms. Miller in the event Lt. Col. Miller predeceases her.

### Relief Sought

Plaintiffs seek the following relief: 1) A declaration from the Court that Ms. Lantz's SBP payment not be reduced by the Social Security offset. Similarly, Ms. Miller seeks a declaration that should she become eligible for SBP benefits and for old age Social Security benefits based on her own employment, that her SBP annuity not be reduced by the Social Security offset; 2) a judgment in favor of Ms. Lantz for the amounts offset against the SBP payments she has already received; 3) a judgment in favor of Lt. Col. Miller in an amount corresponding to the reduction in SBP benefits Ms. Miller could expect due to the Social Security offset should Ms. Miller become eligible for SBP benefits; 4) an order allowing Lt. Col. Miller to withdraw from the SBP should he choose to do so; and, 5) costs and attorney fees.

As far as their summary judgment motion is concerned, plaintiffs claim they are entitled to the above relief under two theories. First, plaintiffs claim that the application of the Social Security offset, when the surviving spouse is entitled to Social Security benefits based on his or her own earnings, is a breach of a contract the retiring servicemembers allegedly made with the government when they elected to participate in the SBP. In connection with this claim, plaintiffs Patricia Lantz and Patricia A. Miller contend they are third-party beneficiaries of the contracts allegedly entered into by their respective husbands. Second, the plaintiffs claim that the government should be equitably estopped from deducting the Social Security offset from the SBP benefit in situations where the surviving spouse is entitled to Social Security benefits based on his or her own Social Security earnings. Plaintiffs base their estoppel argument on certain representations made to the retiring servicemembers when they chose to participate in the SBP.

Defendants also claim they are entitled to summary judgment. Defendants contend they are entitled to summary judgment because the plaintiffs may not, on the undisputed facts, maintain their contract or estoppel claims. Defendants also claim the plain language of the statute in question,

10 U.S.C.A. § 1451 (1983 & Supp.1988), requires the government to reduce SBP benefits in the manner in which the government has been applying the offset.

### Discussion

#### The Statutes

■ The Court, after a careful reading of the statutory scheme involved in this case, concludes that the Social Security offset should not be made against SBP benefits when the beneficiary is receiving Social Security old age payments based on his or her own, not their deceased servicemember's, earnings. The Court reaches this conclusion based on the plain language and defined language of the statutes involved. Since the plaintiffs did not request summary judgment relief based on a reading of the statutes, the Court must determine whether or not it can grant summary judgment relief on a ground that was not raised; that is, the Court must ask whether it has the power to raise this issue *sua sponte.*

" '[D]istrict courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte,* so long as the losing party was on notice that she had to come forward with all her evidence.' " *Graham v. City of Oklahoma City,* 859 F.2d 142 (10th Cir.1988), (quoting *Celotex v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). In light of this language, the Court must ask whether the losing parties, the defendants in this case, came forward with all of their evidence.

Because this matter is before the Court on cross-motions for summary judgment, the Court concludes that all of the evidence in this case is before the Court. The Tenth Circuit has stated that where cross-motions for summary judgment have been filed, an inference is raised "that there is no evidence other than the pleadings and supporting instruments to be considered, and so the trial court need only examine those materials in ascertaining whether an issue of material fact exists." *Securities and Exchange Comm. v. American Commodity Exchange, Inc.,* 546 F.2d 1361, 1366 (10th Cir.1976). The parties have given the

Court no reason to believe that the facts are in dispute or are not as they appear in the record currently before the Court. Consequently, the Court concludes that all of the facts pertinent to this case are currently in the record. Therefore, the Court can, and hereby does, *sua sponte,* make a motion for summary judgment in favor of the plaintiffs based on the language of the statutory provisions in question.

#### a. The Statutory Scheme—The Parties' Positions

■ The starting point of the statutory analysis is the offset statute, wherein it is stated that "[w]hen the widow or widower reaches age 62, ... the monthly annuity shall be reduced by ... an amount equal to the amount of the survivor benefit, if any, to which the widow or widower would be entitled under Title II of the Social Security Act (42 U.S.C. 401 et seq.) based solely upon service by the person concerned as described in section 210(1)(1) of such Act 42 U.S.C. 410(1)(1)...." 10 U.S.C.A. § 1451(a)(3) (1983); *see also* 10 U.S.C.A. § 1451(e)(3) (Supp.1988). This provision, in particular the words "would be entitled to" is a main point of contention between the parties.

The Court can see at least two ways to read this provision. The first is the way suggested by the government. The government contends that the provision requires SBP benefits to be offset in all instances, including those where the SBP beneficiary is receiving no Social Security widow(er)'s benefit. The government contends that the offset should always be equal to the Social Security widow(er)'s benefit attributable to the deceased servicemember's military pay, regardless of whether the widowed spouse is actually entitled to receive this amount.

The second way the Court can read this provision is the way suggested by the plaintiffs. That is, if the widowed spouse is entitled to Social Security widow(er)'s benefits, then and only then will the amount of the SBP payment be reduced by an amount equal to the Social Security

widow(er)'s benefit which is attributable to the deceased spouse's military earnings.

An example might help illustrate the positions of the parties. Assume H is retiring from the Army and elects to participate in the SBP. His retirement pay is one thousand dollars ($1,000.00) per month. Per the terms of the SBP, H will pay the SBP ten percent (10%) of his retirement pay, or one hundred dollars ($100.00) per month.

H dies and is survived by W, aged 63. W has worked many years, and has contributed to the Social Security system. Consequently, based on her own earnings, W is entitled to two hundred dollars ($200.00) per month in Social Security old age benefits.

If W were to receive Social Security widow's benefits, she would receive one hundred dollars ($100.00) per month. Eighty dollars ($80.00) of this amount would be due to H's military earnings, twenty dollars ($20.00) of this amount would be due to jobs H worked outside the military. However, W is not entitled to receive the widow's benefit as her old age benefit ($200.00) exceeds the widow's benefit ($100.00) she would otherwise qualify for.

Under the government's reading of § 1451, W would be given four hundred and seventy dollars ($470.00) per month in SBP benefits. The government would calculate this as follows: W would receive a base SBP monthly annuity in the amount of five hundred and fifty dollars ($550.00), or fifty-five percent (55%) of H's one thousand dollars ($1,000.00) per month retirement pay. From this amount the government would subtract eighty dollars ($80.00), the portion of the widow's benefit attributable to H's military earnings, leaving four hundred and seventy dollars ($470.00). The government argues that under § 1451, it is to make this reduction even though W receives no widow's benefit.

Under the plaintiffs' reading of § 1451, because W receives no widow's benefit, no offset would be applied to W's SBP benefit. Thus, in this example, according to plain-tiffs, W would be entitled to five hundred and fifty dollars ($550.00) from the SBP.

### b. The Statutory Language

The word "entitled", as used in § 1451, is defined in the Social Security Act which is expressly referred to in the text of § 1451. Under 42 U.S.C.A. § 402(e) (1983), and the amended version at 42 U.S.C.A. § 402(e) (Supp.1988), a widow is "entitled" to a widow's benefit only if she meets four criteria: 1) she is not married; 2) she has attained the age of 60; 3) she has made an application for benefits; and 4) she is not entitled to old age benefits, or is entitled to old age benefits which are less than the widow's benefit she might be qualified for. *See* 42 U.S.C.A. § 402(e)(1)(A), (B), (C), and (D) (1983 & Supp.1988). The same rules apply to widowers. *See* 42 U.S.C.A. § 402(f)(1)(A), (B), (C), and (D) (1983 & Supp.1988).

In examining § 1451 then, the offset should not be applied to SBP payments unless the surviving spouse is "entitled" to widow(er)'s benefits. A widow(er) is not "entitled" to the widow(er)'s benefit, by the terms of the statute, where his or her old age benefit exceeds the widow(er)'s benefit he or she would receive. *See* 42 U.S.C.A. § 402(e)(1)(D) (1983 & Supp.1988). This construction of the statute is consistent with plaintiffs' reading.

Applying this analysis to the facts in the present case, the Court concludes that the government has been incorrectly applying the Social Security offset to plaintiff Lantz's SBP payments. Ms. Lantz is "entitled" to nothing from the Social Security system based on her deceased husband's military earnings as she is receiving old age benefits based solely on her own earnings. *See* 42 U.S.C.A. § 402(e)(1)(D) (1983 & Supp.1988). Since Ms. Lantz is not "entitled" to a widow's benefit based on her husband's military earnings, or otherwise, § 1451 does not require an offset.

The Court is satisfied that this reading of the statutes in question is not only consistent with the plain language and defined terms of the statutes, but that this reading is consistent with the intent of Congress

when it established the SBP. The following excerpt from the House Committee on Armed Services' report on the SBP, is particularly telling:

> Section [1451] provides, therefore, that when the widow reaches age 62, or when there are no dependent children, whichever occurs later, the monthly annuity paid under the Survivor Benefit Plan shall be reduced by an amount equal to the amount of Social Security survivor benefit, if any, to which the widow is entitled based solely upon the active military service of the retiree....
>
> In other words, when the widow reaches age 62, her annuity based on her husband's military retired pay would be offset by the equivalent of the *Social Security payment* which is *attributable to her husband's military service.*

H.R.Rep. No. 92–481, 92d Cong., 1st Sess. 14 (emphasis added in part, in original in part). In the same report it is stated:

> There is no reduction in the Social Security benefits that may have been earned as the result of the husband's employment in his post-retirement years or any amount above the amount of the survivor benefit flowing from her husband's military service that the widow may have earned in her own right in private employment. It cannot be over-emphasized that the only *Social Security payments* which are taken into account in this integration of benefits are the payments to the *widow based on her husband's Social Security earned while he was on active duty in military service.*

*Id.* at 15 (emphasis added in part, in original in part). *See also* S.R.Rep. No. 92–1089, 92d Cong., 2d Sess., *reprinted in* 1972, U.S.Code Cong. & Admin.News 3288, 3306 (identical language).

The above excerpts from the applicable legislative history clearly indicate that Congress only intended to reduce SBP payments when the widowed spouse receives Social Security *payments* based on the deceased servicemember's military earnings. The legislative history does not indicate that the offset is to be made in situations where the surviving spouse is receiving Social Security benefits based on his or her own earnings. In the present case, Ms. Lantz is receiving no benefits under the Social Security system based on her deceased husband's military earnings. The Social Security benefits Ms. Lantz receives are based solely on her own earnings history. Therefore, the Court concludes that the government has been incorrectly applying the Social Security offset to Ms. Lantz's SBP payments. Consequently, Ms. Lantz is entitled to an award equal to the amount of the Social Security offset that has been made against her SBP payments. In her affidavit, Ms. Lantz establishes, that her SBP payments have been offset in the amount of four thousand seven hundred and eighty-eight dollars and forty cents ($4,788.40). This amount has not been disputed by the defendants, therefore, judgment will be entered in favor of Ms. Lantz and against defendants for this amount.

Defendants will also be ordered to make future SBP payments to Ms. Lantz in a manner consistent with the statutory scheme as interpreted in this order. This portion of the order will apply to payments made to Ms. Lantz after and including October, 1988, the first month after the last month covered by her affidavit. Payments under this order shall continue until such time as Ms. Lantz is no longer entitled to SBP payments.

It will also be ordered that should plaintiff Patricia A. Miller become eligible for payments under the SBP while the above described statutory scheme remains in effect, that such payments be made to her in a manner consistent with the statutes as interpreted in this order.

### *Contractual Protection*

█ The Court is tempted to stop at this point. By finding the government has not been paying SBP benefits in a manner consistent with statutory scheme creating the SBP, and by ordering the above relief, the Court has given the plaintiffs nearly all of the relief they seek in this lawsuit. However, by resting solely on the statutory grounds, the Court leaves the plaintiffs

open to possible amendments to the statute that would alter the payment scheme described above. This brings the Court to the plaintiffs' argument that they are somehow contractually entitled to SBP payments. If the plaintiffs are correct, then their SBP benefits may be entitled to more protection than merely relying on the statutory language would provide. Therefore, the Court feels compelled to examine the plaintiffs' argument that they have a contract with the government for the SBP benefits.

The Court begins by noting that there is no federal case or statutory law that addresses the issue of whether a contract is created between the government and plan participants in a situation such as this, where participants pay for the privilege of participating in the plan. The defendants cite many cases that stand for the proposition that most government employees do not have contract rights in their employment. *See e.g., Kizas v. Webster*, 707 F.2d 524 (D.C.Cir.1983) where the Court of Appeals stated that federal workers' right to pay " 'must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles.' " *Id.* at 535 (footnotes omitted). The defendants have also cited cases holding that contract principles are inapplicable to Social Security benefits and to military pay. *See Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961) ("[C]ommon-law rules governing private contracts have no place in the area of military pay."); *Flemming v. Nestor*, 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960) (a contributing worker's interest in the Social Security system described as "noncontractual").

The cases cited by defendants do not take into account certain realities of the SBP. The SBP is not like government employment, it is not like military pay, and it is not like Social Security. The SBP is a voluntary program that the participants elect to take part in. In addition to being voluntary, the SBP differs from the cases cited by defendants in that the SBP requires the participants to pay for the opportunity to collect on the benefits offered by the SBP.

The defendants argue that the SBP is most like the Social Security system and that cases like *Flemming, supra,* holding that the Social Security system does not create contract rights in its beneficiaries, should apply. The Court does not agree with the defendants' analogy. Again, the SBP is a voluntary system where the plan participants elect to pay money in return for certain benefits. The Social Security system is not voluntary. The payments made into the Social Security system by workers are not made after the exercise of a choice by the workers. Social Security payments are indeed, as the Supreme Court has stated, more akin to a tax. *See Flemming, supra,* 363 U.S. at 609, 80 S.Ct. at 1372. Therefore, the Court concludes that the SBP is not like the Social Security system.

The defendants argue that the SBP is not voluntary because a retiring servicemember is automatically enrolled in the program upon reaching retirement age, and must "opt out" of the plan if he he or she does not wish to participate. The distinction between "opting in" and "opting out" of a program is lost on the Court. The only difference between an "opt in" and "opt out" program is that the participant voluntarily participates in the program by *action* in the former case, and *inaction* in the latter.

The Court's determination that the SBP is a voluntary program is consistent with the decision of the Indiana Supreme Court in *Board of Trustees of the Public Employees' Retirement Fund v. Hill,* 472 N.E.2d 204, 208 (Ind.1985). In *Board of Trustees,* the Indiana Supreme Court dealt with many of the same questions that the Court faces in this case. *Board of Trustees* involved a government employee retirement plan that was quite similar to the SBP; enrollment in the plan was automatic, however, the participant could "opt out" of the plan if he or she desired to do so. Once in the Indiana plan, the participants were required to contribute a portion of their earnings to the plan. In holding that

the "opt out" plan was indeed voluntary, the court stated: "Entry of an employee into a retirement plan offered by an employer is truly voluntary for these purposes when the employee can elect not to participate without detrimental consequences to the relationship." *Board of Trustees, supra,* 472 N.E.2d at 208.

The question remains whether servicemembers who elect to participate in the SBP and pay money into the program, have a contract with the government. The Court concludes that they do. In the case of the plaintiffs here, there was an offer from the government to participate in the SBP, the offer was accepted when the servicemembers in question elected to sign up for or to stay in the SBP, finally, the servicemembers in question gave consideration for the government's promise to pay benefits under the SBP when they made cash payments to the program via withdrawals from their retirement pay. In concluding that there is a contract between the plaintiffs and the government, the Court's holding is consistent with state decisions that have concluded that a contract or annuity is created when government employees sign up for programs like the SBP. *See Board of Trustees, supra,* 472 N.E.2d at 208 and cases cited therein.

The Court recognizes that there are servicemembers of retirement age who remain in the active service, and that these individuals are in the SBP and are not required to pay into the plan. This decision does not involve these individuals. This decision only involves these plaintiffs who are, or are beneficiaries of, or potential beneficiaries of, servicemembers who have voluntarily paid for the opportunity of receiving benefits under the plan. Maj. Lantz and Lt. Col. Miller made the decision to take a portion of their retirement pay and give it to the government so that the government will pay their survivors certain benefits should the servicemember predecease them. The expectations of these people are deserving of some level of protection. The Court feels that this protection must be in the form of a contract that was created when these servicemembers agreed to participate in the SBP.

Having concluded that a contract was created between the servicemember and the government, the question becomes: What are the terms of the agreement? The plaintiffs have submitted various government pamphlets and information materials that describe the SBP. These documents were given to the servicemembers in question when they signed up for the program. The plaintiffs now contend that these materials should provide the terms of the plan. The Court does not agree. The terms of the contract are the statutes that define the SBP. These statutes have been discussed at length above and need not be discussed here.

■ Having concluded that a contract was created, and having determined what the terms of the contract are, the Court must now determine whether the plaintiffs here have the power to enforce the contract. Certainly Lt. Col. Miller, as the individual who elected to participate in the SBP is a party to the contract and can sue to enforce it. Because Lt. Col. Miller's contract was intended to benefit his wife, it is clear that plaintiff Patricia A. Miller was an intended beneficiary of the contract. Therefore, she is a third-party beneficiary of the contract and may sue for enforcement. *See Northern Nat. Gas Co. v. Grounds,* 666 F.2d 1279 (10th Cir.1981). Similarly, the contract entered into by Maj. Lantz was intended to benefit his wife, plaintiff Patricia A. Lantz. She, too, is a third-party beneficiary with standing to sue on this contract. *See Id.*

■ Before the Court enters its judgment and order, the Court notes that Lt. Col. Miller seeks a return of the money he has paid into the SBP. The Court concludes that such a return would not be an appropriate remedy in this case. When Lt. Col. Miller signed up for the SBP, he was essentially taking a risk that he would predecease Ms. Miller, thereby entitling her to benefits under the plan. If the Court ordered a return of Lt. Col. Miller's funds, the Court would be upsetting the balance of risks undertaken by Lt. Col. Miller and

the government when they entered into their SBP relationship.

Therefore, for the reasons stated above, it is

ORDERED that judgment be entered in favor of the plaintiff Patricia A. Lantz in the amount of four thousand seven hundred and eighty-eight dollars and forty cents ($4,788.40). It is further

ORDERED that the defendants pay plaintiff Patricia A. Lantz any SBP payments to which she is entitled, in a manner consistent with this opinion. It is further

ORDERED that should plaintiff Patricia A. Miller become eligible for SBP payments, that such payments be made in a manner consistent with this opinion.