**Richard L. MILLER and Patricia A. Miller, husband and wife; Patricia A. Lantz, and all others similarly situated, Plaintiffs–Appellees,**

v.

**James F. McGOVERN, in his official capacity as Secretary of the United States Air Force; et al., Defendants–Appellants.**

No. 89–8003.

United States Court of Appeals, Tenth Circuit.

June 29, 1990.

C.M. Aron (Richard A. Hennig and Patricia L. Simpson of Aron and Hennig, with him on the brief), Laramie, Wyo., for plaintiffs-appellees.

Constance Wynn (John R. Bolton, Asst. Atty. Gen., Stuart E. Schiffer, Acting Asst. Atty. Gen., Richard Allen Stacy, U.S. Atty., and John F. Cordes, with her on the brief), Dept. of Justice, Washington, D.C., for defendants-appellants.

Russell H. Putnam, Jr. of The Austin Law Firm, Columbia, S.C., for the Nat. Ass'n for Uniformed Services and Soc. of Military Widows, Amici Curiae.

Before HOLLOWAY, Chief Judge, McWILLIAMS, Circuit Judge, and BABCOCK, District Judge.*

* Honorable Lewis T. Babcock, United States District Judge for the District of Colorado, sitting by designation.

McWILLIAMS, Circuit Judge.

Richard Miller and his wife, Patricia Miller, and Patricia Lantz, on behalf of themselves and all others similarly situated, brought suit in the United States District Court for the District of Wyoming against Edward Aldridge, then Secretary of the United States Air Force, John Marsh, Secretary of the United States Army, William Ball, III, Secretary of the Navy, Dorcas Hardy as Administrator of the Social Security Administration, Dr. Otis Bowen, Secretary of Health and Human Services, and others, challenging their interpretation and application of 10 U.S.C. § 1451(e)(3), which statute is a part of the military's Survivor Benefit Plan (SBP), 10 U.S.C. § 1447–55.

Count one of the complaint was for breach of contract. Count two sought declaratory judgment. Count three was denominated as "Violation of Constitutional Right to Uniform Application of the Law." Count four was denominated as "Unconstitutional Taking of Property without Compensation." Jurisdiction was based on the Constitution of the United States and various federal statutes, including 28 U.S.C. § 1346(a)(2).[1]

On cross-motions for summary judgment the district court granted plaintiffs' motion and denied the defendants' motion. In so doing, the district court recognized that it was granting the plaintiffs' motion for summary judgment on a ground which the plaintiffs had not themselves urged in their motion for summary judgment. The defendants now appeal the judgment thus entered.

As indicated, this appeal concerns the meaning of 10 U.S.C. § 1451(e)(3), which reads as follows:

(3) An annuity computed under this subsection shall be reduced by the lesser of—

(A) the amount of the survivor benefit, if any, to which the widow or widower or former spouse would be entitled under title II of the Social Security Act (42 U.S.C. § 401 et seq.) based

solely upon service by the person concerned as described in section 210(*l*)(1) of such Act (42 U.S.C. 410(*l*)(1)) and calculated assuming that the person concerned lives to age 65; or

(B) [Inapplicable].

In granting plaintiffs' summary judgment the district court in its order, which now appears as *Miller v. Aldridge,* 700 F.Supp. 1565, 1570 (D.Wyo.1988), well described the respective positions of the parties with the following example:

An example might help illustrate the positions of the parties. Assume H[usband] is retiring from the Army and elects to participate in the SBP. His retirement pay is one thousand dollars ($1,000.00) per month. Per the terms of the SBP, H will pay the SBP ten percent (10%) of his retirement pay, or one hundred dollars ($100.00) per month.

H dies and is survived by W[ife], aged 63. W has worked many years, and has contributed to the Social Security system. Consequently, based on her own earnings, W is entitled to two hundred dollars ($200.00) per month in Social Security old age benefits.

If W were to receive Social Security widow's benefits, she would receive one hundred dollars ($100.00) per month. Eighty dollars ($80.00) of this amount would be due to H's military earnings, twenty dollars ($20.00) of this amount would be due to jobs H worked outside the military. However, W is not entitled to receive the widow's benefit as her old-age benefit ($200.00) exceeds the widow's benefit ($100.00) she would otherwise qualify for.

Under the government's reading of § 1451, W would be given four hundred and seventy dollars ($470.00) per month in SBP benefits. The government would calculate this as follows: W would receive a base SBP monthly annuity in the amount of five hundred and fifty dollars ($550.00), or fifty-five percent (55%) of H's one thousand dollars ($1,000.00) per

---

**1.** The defendants doubt that the district court had jurisdiction under 28 U.S.C. § 1346(a)(2), but believe that the district court had jurisdic-

tion under 28 U.S.C. § 1331. *See Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

month retirement pay. From this amount the government would subtract eighty dollars ($80.00), the portion of the widow's benefit attributable to H's military earnings, leaving four hundred and seventy dollars ($470.00). The government argues that under § 1451, it is to make this reduction even though W receives no widow's benefit [because her old-age benefit exceeds the widow's benefit she would otherwise qualify for].

Under the plaintiffs' reading of § 1451, because W receives no widow's benefit, no offset would be applied to W's SBP benefit. Thus, in this example, according to plaintiffs, W would be entitled to five hundred and fifty dollars ($550.00) from the SBP.

Plaintiffs' motion for summary judgment merely stated that there was no genuine issue of material fact as to any of its four claims for relief and that they were entitled to judgment as a matter of law on each claim based on the reasons advanced in their brief in support of the motion. We do not find that brief in the record on appeal. Be that as it may, it would appear from the district court's order granting plaintiffs' motion for summary judgment that plaintiffs did not claim in their motion for summary judgment that they were entitled to summary judgment on a "plain reading" of 10 U.S.C. § 1451(e)(3). Rather, in its published order, the district court noted that the plaintiffs claimed they were entitled to summary judgment under two theories: (1) breach of contract by the government, and (2) the government was subject to equitable estoppel.

The district court in its order granting plaintiffs' motion for summary judgment stated that it "must determine whether it can grant summary judgment relief on a ground that was not raised...." The district court concluded that it could and stated that the district court "can, and hereby does, *sua sponte*, make a motion for summary judgment in favor of the plaintiffs based on the language of the statutory provisions in question." The district court then proceeded to grant the motion on that ground, holding that the "plain meaning" of 10 U.S.C. § 1451(e)(3) precluded the

government from interpreting that statute as it had been doing, i.e., reducing the SBP benefits paid to the surviving spouse of a military retiree by the amount of Social Security survivor benefits based on the military service of the decedent even though the surviving spouse under Social Security law was not entitled to receive Social Security survivor benefits because the surviving spouse was on her own account entitled to Social Security old-age retirement benefits which exceeded the Social Security survivor benefits to which she was otherwise entitled.

The district court opined that having concluded that the government has not been paying benefits under the military SBP in a "manner consistent with the statutory scheme creating the SBP," it was "tempted to stop at this point." However, the district court elected "not to stop" and went on to hold that the plaintiffs "had a contract with the government for SBP benefits" consistent with its understanding of the plain meaning of 10 U.S.C. § 1451(e)(3). Under such circumstances, the district court did not find it necessary to deal with plaintiffs' estoppel claim. Accordingly, we are not concerned on appeal with the equitable estoppel argument.

We first deal with 10 U.S.C. § 1451(e)(3). Plaintiffs argue that the "plain meaning" of that statutory provision is the exact opposite of the "plain meaning" given the statute by the district court. Some background is in order.

Congress created the SBP in 1972 as a mechanism to provide income to the surviving spouses of members of the military service who die after becoming eligible to retire. S.Rep. No. 92–1089, 92d Cong., 2d Sess. 1, *reprinted in* 1972 U.S.Code Cong. & Admin.News 3288, 3289. The SBP was designed to "build upon the income-maintenance foundation" of benefits provided by Title II of the Social Security Act. S.Rep. No. 92–1089, 92d Cong., 2d. Sess. 29, *reprinted in* 1972 U.S.Code Cong. & Admin. News 3288, 3304. In particular, Congress wanted to fill the gap in Title II Social Security coverage that existed in the case

of wives of military retirees who were widowed at too young an age to begin receiving Social Security survivor benefits. *Id.; see also* H.R.Rep. No. 99–81, 99th Cong., 1st Sess. 250–51, *reprinted in* 1985 U.S. Code Cong. & Admin.News 472, 527.

Under the terms of the SBP, a member of the military who reaches retirement age is automatically a participant in the SBP even though he does not take retirement. As long as the individual remains on active duty, he makes no payment to the program. And if the service member should die, and his widow is under 62 years of age, she will receive a monthly annuity in the amount of 55% of the pay received by the decedent.

When the service member who is eligible for retirement actually retires, he has a choice of whether he will be a participant in the SBP. However, unless he "opts out," he is deemed a participant in the SBP and he then contributes 10% of his retirement pay to the program. When the retired service member dies, his widow, if under 62 years of age, will receive a monthly annuity equal to 55% of the deceased service member's retirement pay.

When the annuitant reaches 62 years of age, or if the annuitant is 62 at the time of the spouse's death, the annuitant is not entitled to a monthly annuity equal to 55% of the deceased service member's retirement pay. Rather, the SBP annuity, i.e., 55% of the pay received by the deceased, is reduced by that portion of the Survivor Benefit under Title II of the Social Security Act to which the annuitant would be entitled on account of the military service of the decedent.[2] This reduction is referred to as the "Social Security offset," and appears as 10 U.S.C. § 1451(e)(3).[3]

A military SBP annuitant who is 62 years of age, or over, is conceivably entitled to Title II Social Security benefits.[4] Under the current version of Title II, an individual is entitled to old-age benefits if he or she is "fully insured" within the meaning of Title II and has attained the age of 62. Also, under the current version of Title II, the surviving spouse of an individual who is "fully insured" at the time of his death is entitled to survivor benefits.

Under Title II, a person may be entitled to old-age insurance benefits and also to survivor benefits. However, that person is not entitled to the aggregate of both sets of benefits. Instead, the amount of monthly survivor benefits is reduced, but not to less than zero, by the amount of monthly old-age benefits. In practical effect, then, an individual who is entitled to both old-age benefits and survivor benefits under Social Security receives only the single greater amount of the two sets of benefits.

Although the complaint stated that this was to be a class action, no motion for class certification was filed. Accordingly, we are here concerned with the three named individual plaintiffs.

Patricia Lantz is the widow of Major Alfred Lantz. On December 17, 1959, Major Lantz retired from the United States Army. When the SBP was created in 1972, Major Lantz chose to participate in the SBP and, thereafter, paid into the SBP the required percent of his retirement pay until his death on December 23, 1985.

At the time of her husband's death, Patricia Lantz was 68 years old. From 1942 to 1981, Patricia Lantz worked as a registered nurse and for that period of time contributed to the Social Security system. Due to her contributions to Social Security, Ms. Lantz receives $362.00 per month in

**2.** Military personnel accrue credit toward "fully insured" status under Title II in the same manner as do other occupational groups. As a result, military personnel, by virtue of their military service, may become eligible for Title II old age insurance benefits, and their widows and widowers may become eligible for Title II survivor benefits.

**3.** In 1985, Congress eliminated the Social Security offset, and now an annuitant who is 62 years

of age, or older, receives 35% of decedent's retirement pay. However, the 1985 amendments do not apply to this proceeding.

**4.** While individuals become entitled at age 60 to widow's and survivor benefits under Title II, 42 U.S.C. § 402(e)(1) & (f)(1), the statutory integration of SBP annuities with survivor benefits begins (and has always begun) at age 62. The reason for this discrepancy is not clear.

Social Security old-age benefits. But for the fact that Ms. Lantz receives old-age benefits based on her own work history, she would also receive a Social Security survivor benefit based on her deceased husband's contribution to the Social Security plan. However, Ms. Lantz is not entitled to receive a Social Security survivor benefit because the old-age benefit which she is receiving as a result of her own work exceeds the survivor benefit, and under the Social Security Act she is not entitled to both.

Since her husband's death, Ms. Lantz has been receiving a monthly annuity from the SBP, in addition to her Social Security old-age benefit, but the annuity from the SBP has been reduced by the Social Security offset, and it is this "offset" which is at issue in her case.[5]

The remaining plaintiffs are Richard and Patricia Miller, husband and wife, who are both living. In 1981, Richard Miller retired from the United States Air Force and upon his retirement he elected to participate in the SBP and has since been making monthly contributions to the SBP. Mrs. Miller is a schoolteacher and is herself "fully insured" under Social Security. Should Richard Miller predecease Patricia Miller, Patricia does not anticipate that she will be entitled to survivor benefits under Social Security because her old-age benefits under Social Security would be greater than the survivor benefits. The Millers are plaintiffs in this action, according to the district court, because "they fear what has happened to Ms. Lantz with regard to Social Security offset will happen to Mrs. Miller" should she outlive her husband. Richard Miller also sought a declaration that he be given the opportunity to opt out of the SBP and receive a refund of contributions previously paid.

The district court in denying a motion to dismiss concluded, *inter alia*, that Richard Miller had standing to sue the defendants because he was a party to a contract, and that Mrs. Miller and Ms. Lantz had standing to sue because they were third party beneficiaries. The district court found subject matter jurisdiction under 28 U.S.C. § 1346(a)(2).

After stating the "plain meaning" of 10 U.S.C. § 1451(e)(3), the district court entered judgment for Ms. Lantz in the sum of $4,788.40, said sum representing the underpayment to Ms. Lantz resulting from the Social Security offset which had been applied to her SBP benefit. The district court further ordered that future payments to Ms. Lantz should be "consistent with its opinion," and that should Mrs. Miller outlive her husband, military survivor benefits paid to her should be "in a manner consistent with this opinion." The district court disallowed Richard Miller's claim for refund of his contributions to the SBP.

10 U.S.C. § 1451(e)(3) provides that the SBP survivor annuity will be reduced at age 62 by:

[T]he amount of survivor benefit, if any, to which the widow or widower or former spouse *would be* entitled under title II of the Social Security Act (42 U.S.C. 401 et seq.) *based solely upon service* by the *person concerned* as described in section 210(*l*)(1) of such Act (42 U.S.C. 410(*l*)(1)) and calculated assuming the person concerned lives to age 65; ... (emphasis added).

The critical language in the statute is "would be entitled" and "based solely upon the service by [the deceased spouse]." Under Title II of the Social Security Act, a person is not ordinarily entitled to survivor benefits if the person's own old-age benefits exceed the amount of the survivor benefits. However, solely for the purpose of

---

**5.** A hypothetical may help to put the issue in better focus. If Ms. Lantz did not have a work history of her own which qualified her as "fully insured" under the Social Security Act, she, of course, would not have qualified for old-age insurance benefits, in which event she would have been eligible to receive and would have received the survivor benefit under the Social Security Act, which would include the benefits based on her deceased husband's military employment and any non-military employment. However, under the Social Security offset provision of the military's SBP, that part of the Social Security survivor benefit based on her deceased husband's military employment would be deducted from survivor benefits otherwise payable under the SBP.

determining the amount of the offset, the statute mandates that the amount be determined by looking to the Social Security survivor benefit that "would be" payable to the surviving spouse based on the military service of the decedent. The statute says that the SBP annuity shall be reduced by the amount of the Social Security survivor benefit to which the spouse "would be entitled" resulting from the military service of the decedent. "Would be entitled" is not the equivalent of "is entitled" and the former is sufficiently broad to include the situation where a person would otherwise be entitled to a Title II survivor benefit but because of the triggering of another statutory provision will not actually be eligible to receive, nor will he, or she, actually receive payment of the benefit. The Social Security offset is concerned with how the offset will be calculated, not the actual entitlement for Title II survivor benefits.

We believe the meaning which we find in 10 U.S.C. § 1451(e)(3) is consistent with legislative history. The Senate Report prepared by the Armed Services Committee, under the heading of "Rationale for Including Social Security Offset in Survivors Benefit Plan," states that "the proposed survivor benefit program is designed to build upon the income-maintenance foundation of the social security system. Thus, the benefits are integrated with social security benefits." S.Rep. No. 92–1089, 92 Cong., 2nd Sess. 29, *reprinted in* 1972 U.S.Code Cong. and Admin.News 3288, 3304. The Senate Committee then illustrated the actual effect of the offset provision to an SBP beneficiary, stating that "when a widow reaches age 62, her [SBP] annuity based on her husband's military retirement pay would be offset by the equivalent of the Social Security payment which is *attributable to her husband's military service.*"

The defendants argue, alternatively, that if the interpretation they have given 10 U.S.C. § 1451(e)(3) is not mandated by the "plain meaning" of that statute, their interpretation is nonetheless a "permissible" interpretation and should be afforded substantial deference by a reviewing court. Although we believe that the defendants' interpretation follows the "plain meaning" of the statute, certainly it is, at a minimum,

a "permissible one" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In that case, the Supreme Court at pp. 842–44, 104 S.Ct. at 2781–82 spoke as follows:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

As indicated, the district court also held that plaintiffs had a "contract" with the government. In the district court, the plaintiffs suggested that the "terms" of

the "contract" were set forth in various government pamphlets and brochures describing the SBP, and that the government should be held to those terms. The district judge rejected that suggestion and held that the "terms" of the "contract" were the statutes and, in particular, the meaning which he found in 10 U.S.C. § 1451(e)(3). In other words, the government's failure to apply 10 U.S.C. § 1451(e)(3) in accord with the district court's reading of the statute was itself a breach of contract. Having now held that the meaning which the district court gave 10 U.S.C. § 1451(e)(3) is erroneous, any "contract" which plaintiffs conceivably had with the government would now be subject to the meaning we have given that statute. All of which is, of course, no comfort to the plaintiffs. Accordingly, we need not determine here whether there was a "contract," in the strict legal sense, with the government.

Defendants concede that Ms. Lantz has standing to maintain the present action, but argued in the district court, and here, that the Millers do not. In view of our reading of 10 U.S.C. § 1451(e)(3), we deem it unnecessary to explore this matter.

Judgment reversed.